FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2019

SEAN F. McAVOY, CLERK

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

PAMELA L.,

Plaintiff,

9

v.

10

COMMISSIONER OF SOCIAL
SECURITY,

11

12

Defendant.

No. 1:18-CV-03058-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

13

14

Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 12 & 13. Plaintiff brings this action seeking judicial review, pursuant to 42

15

U.S.C. § 405(g), of the Commissioner's final decision, which denied her

16

application for Supplemental Security Income under Title XVI of the Social

17

Security Act, 42 U.S.C §§ 1381-1383f. After reviewing the administrative record

18

and briefs filed by the parties, the Court is now fully informed. For the reasons set

19

forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

20

**DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

# I. JURISDICTION

Plaintiff filed her application for Supplemental Security Income benefits on November 24, 2014. AR 18, 88.[1] Her alleged onset date of disability is November 1, 2014. *Id.* Plaintiff's application was initially denied on February 24, 2015, AR 18, 98-99, and on reconsideration on April 27, 2015, AR 18, 115-16.

A hearing with Administrative Law Judge ("ALJ") Tom L. Morris occurred on February 1, 2017. AR 18, 42-86. On March 22, 2017, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 18-35. The Appeals Council denied Plaintiff's request for review on February 14, 2018, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on April 12, 2018. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] Plaintiff previously applied for Supplemental Social Security Income on June 11, 2010. AR 120. On July 3, 2012, an ALJ issued a decision denying disability benefits. AR 139. On August 5, 2013, the Appeals Council denied Plaintiff's request for review and became final ruling of the Commissioner. AR 145. In the instant ALJ noted that due to Plaintiff's allegations of worsening impairments, *res judicata* did not apply to the current application. AR 18. However, the ALJ further stated that any discussion of evidence contained in the prior ALJ decision was used only to determine Plaintiff's credibility and impairment history and did not constitute a reopening of the prior adjudication. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.   STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 43 years old on the date the application was filed. AR 34, 88, 934. She has at least a high school education. AR 34, 776. Plaintiff is able to communicate in English. AR 34, 947. Plaintiff has past relevant work as a home attendant. AR 34, 348.

//

# V.    THE ALJ'S FINDINGS

The ALJ determined that Plaintiff has not been under a disability within the meaning of the Act since November 24, 2014, the date the application was filed. AR 19, 35.

**At step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the filing of her application on November 24, 2014 (citing 20 C.F.R. § 416.971 *et seq*.). AR 20.

**At step two**, the ALJ found that Plaintiff has the following severe impairments: spinal impairment, fibromyalgia, right shoulder impairment, peripheral neuropathy, obesity, pseudoseizures, affective disorder, borderline intellectual functioning, post-traumatic stress disorder, other anxiety disorder, and personality disorder (citing 20 C.F.R. § 416.920(c)). *Id*.

At **step three**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 (citing 20 C.F.R. §§§ 416. 920(d), 416.925 and 416.926). AR 21.

**At step four**, the ALJ found that Plaintiff has the following residual functional capacity: she can perform light work, as defined in 20 C.F.R. § 416. 967(b), with some exceptions; she can stand and/or walk for five hours in an eight-hour workday with normal breaks; she can never climb ladders, ropes, or

scaffolding; she can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; she can occasionally reach overhead with her right upper extremity; she should avoid concentrated exposure to hazards and pulmonary irritants; she is capable of understanding and remembering simple instructions and procedures consistent with unskilled work tasks; she is capable of superficial contact with coworkers; she can never have contact with the general public for work tasks, but she is not precluded from having brief, incidental contact with the public; she is not able to perform at a production rate pace (e.g., assembly line work where pace is mechanically controlled); she can perform goal oriented work (e.g., office cleaner with tasks more controlled by worker); she may be off-task up to ten percent of an eight-hour workday.

The ALJ determined that Plaintiff was unable to perform any past relevant work as a home attendant. AR 34.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 34-35. These include, deliverer, document preparer, and toy stuffer. AR 35.

## VI.  ISSUES FOR REVIEW

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred

by: (1) improperly discrediting Plaintiff's subjective complaint testimony; (2) improperly weighing the medical opinion evidence; and (3) failing to include medically-determinable, severe impairments at step two of the sequential process. ECF No. 12 at 1.

## VII. DISCUSSION

### A. The ALJ Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ erred by discrediting Plaintiff's subjective complaint testimony without providing clear and convincing reasons for doing so. ECF No. 12 at 17. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284.

When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 26. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 21-28.

### 1. The ALJ properly discredited Plaintiff's subjective complaints due to inconsistencies with the medical evidence.

Firstly, the ALJ noted multiple inconsistencies between Plaintiff's subjective complaints and the medical evidence. AR 22-23. This determination is supported by substantial evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a

legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

### a. The medical evidence does not support the level of physical impairment alleged by Plaintiff.

Plaintiff alleges that the following physical impairments render her completely disabled: fibromyalgia, back pain, right shoulder impairment, diabetes, edema, migraines, and deep vein thrombosis, asthma, and an overactive bladder. AR 26, 88-87; ECF No. 12 at 3-5. However, as discussed by the ALJ, these allegations are contradictory to the objective medical evidence in the record. AR 21, 26-28.

For example, the ALJ noted that Plaintiff's allegations of a debilitating spinal impairment conflicted with the objective medical evidence in the record. AR 26. Specifically, in August 2011, magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine found only mild degenerative changes, with no significant stenosis or nerve root compression. AR 26, 549. In July 2014, an inspection of Plaintiff's back and spine revealed no abnormalities. AR 26, 386. And, in February 2015, Plaintiff denied having any numbness or weakness related to her spinal impairment. AR 26, 482.

The ALJ also noted that the medical evidence was inconsistent with Plaintiff's allegedly disabling shoulder impairment. AR 21, 26. For instance, during examinations, Plaintiff repeatedly displayed full active range of motion in

her extremities, with no palpation and no deficits in her sensation or strength. AR 21, 671-73, 691-92, 728-30, 755, 767, 924-25. *See Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 9th Cir. 1999) (an ALJ's determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony).

The ALJ pointed to further evidentiary inconsistencies with regard to Plaintiff's alleged seizures. AR 21, 27-28. For instance, in November 2016, a neurological examination found normal mental status, normal gait, intact sensation, no musculoskeletal abnormalities, and was negative for Romberg signs. AR 21, 923-26. After two "questionable" events of bilateral arm shaking, Plaintiff's EEG in December 2016, was normal. AR 21, 921-22. Plaintiff's seizures were deemed to be pseudoseizures due to Plaintiff's responses to stimuli during an event. AR 21, 672. And, a physician noted Plaintiff's display of seizure activity as "self-limited." AR 21, 693.

### b. The medical evidence does not support the level of mental impairment alleged by Plaintiff.

Plaintiff alleges that the following mental impairments render her completely disabled: affective disorder, post-traumatic stress disorder, anxiety disorder, personality disorder, and depression. AR 88-87; ECF No. 12. However,

the ALJ properly found that Plaintiff's subjective complaints of disabling mental impairments were inconsistent with the objective medical evidence. AR 27.

For example, Plaintiff's examination findings documented generally normal mental functioning, including normal concentration, appropriate behavior, and intact cognition. AR 27, 328, 389-90, 480, 478, 746-47. At a psychiatric evaluation in February 2015, Plaintiff displayed cooperative behavior, adequate eye contact, relatively euthymic affect, poor vocabulary but intact mental associations, and intact memory. AR 27, 475-80. Further, examining psychiatrist, Dr. Williams, noted, "I did not see any clinical evidence of depression, although it is possible that her depression is well controlled by the [medication] she takes presently." AR 27, 480.

These benign findings throughout examinations and evaluations suggest Plaintiff's mental and physical impairments are not as debilitating as alleged. Thus, the ALJ did not err in discrediting Plaintiff's subjective complaints due to inconsistencies with objective medical evidence. *See Regennitter*, 166 F.3d at 1297.

### 2. The ALJ properly discredited Plaintiff's subjective complaints due to her activities of daily living.

Secondly, the ALJ found that Plaintiff's allegations of completely disabling limitations were belied by her actual level of activity. AR 21-28. Activities inconsistent with the alleged symptoms are proper grounds for questioning the

credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed to several of Plaintiff's activities of daily living do not correlate to the level of impairment she asserts. AR 21-28. These activities include shopping independently, caring for multiple pets, exercising regularly, "power walking," riding her bike, using public transportation, cooking, and doing household chores. AR 22, 28-29, 50, 347-48, 479-80, 370, 503, 568-69, 776, 812, 820, 827.

Additionally, it was noted that Plaintiff's ability to care for her ailing mother by cooking for her, making sure she takes her medication and going to appointments with her, AR 29, 61; spend a year providing in home care for another individual, AR 29, 52, 477; and organize a small support group that met once a week, AR 29, 479, did not comport with the level of impairment Plaintiff alleged. *See Thomas*, 278 F.3d at 958-59 (a claimant's work record is an appropriate consideration in weighing her symptom complaints); 20 C.F.R. § 404.1529(c)(3) (2011).

As such, the ALJ properly determined that Plaintiff's activities did not support the level of disability she alleged and provided multiple clear and convincing reasons for such determination.

### 3. The ALJ properly discredited Plaintiff's subjective complaints due to inconsistency with treatment.

Thirdly, the ALJ found that Plaintiff's allegations of disabling limitations are inconsistent with the level of treatment she sought during the relevant time period. AR 21-28. The Ninth Circuit has indicated that a claimant's statements may be less credible when treatment is inconsistent with the level of complaints, or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. The ALJ pointed to ample inconsistencies between Plaintiff's allegations and her actual level of treatment.

In November 2013, Plaintiff declined to restart psychiatric medication and she had been out of her insulin medication for over a month. AR 27, 437. "Unexplained, or inadequately explained, failure to seek treatment … can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Further, in October 2010 and February 2015, Plaintiff was treating her pain with Ibuprofen. AR 26, 331, 482. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345-47 (9th Cir. 1991) (an ALJ may reject a

claimant's statements and testimony as not credible based on the nature of treatment received).

The ALJ also pointed to Plaintiff's successful treatment. AR 21-28. In July 2014, Plaintiff reported that her counseling was "very helpful." AR 27, 382. She also reported being able to control her feelings of anger, aggression, and suicidal ideation. AR 328-35, 461. As such, Plaintiff's allegations of disabling mental impairments are belied by her effective responses to treatment. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (an ALJ may find a claimant's subjective symptom testimony not credible based on evidence of effective responses to treatment); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3).

Thus, the ALJ properly determined that Plaintiff's level of treatment did not support level of impairment by Plaintiff.

### 4. The ALJ properly discredited Plaintiff's subjective complaint testimony due to evidence of malingering.

Lastly, the ALJ noted multiple instances of Plaintiff malingering and providing misleading statements to health care professionals, AR 27-28. *See Smolen,* 80 F.3d at 1284 (an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying"). Affirmative evidence of malingering supports rejecting a claimant's testimony. *See Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). To support his finding of malingering, the ALJ pointed to Dr. Toews diagnosis of probable malingering

during an evaluation in October 2010. AR 335. During another evaluation in 2010, with a state agency psychiatrist, Plaintiff's responses to the MMPI-2 and SIMS indicated probable malingering and the doctor diagnosed her with malingering. AR 24-25, 28, 318-35.

Further, Dr. Cline noted that during a psychological evaluation Plaintiff reported frequent suicidal gestures but that they seemed more manipulative than anything. AR 564. And in August 2014, when asked to identify symptoms and impairments, Plaintiff stated, "I'm not too sure, but I'm trying to get social security." AR 28, 563. If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. *See Carmickle*, 533 F.3d at 1161 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Thus, the record supports the ALJ's determination that Plaintiff's conditions were not as limiting as Plaintiff's alleged. The ALJ is the trier of fact, and "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina*, 674 F.3d at 1111; *see also Thomas*, 278 F.3d at 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

Here, the ALJ provided multiple reasons that are substantially supported by the record to explain the adverse credibility finding. The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

Plaintiff also asserts that the ALJ erred in weighing the medical opinion evidence from five providers: (1) treating physician, Caryn Jackson, M.D.; (2) examining psychologist, R.A. Cline, Psy.D.; (3) examining physician, William Drenguis, M.D.; (4) examining physician, C. Donald Williams, M.D.; and (5) therapist, Laurie Jones, L.M.F.T. ECF No. 12 at 5-17.

**1. Legal standard.**

Title II's regulations, and accordingly, the Ninth Circuit, distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally,

a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's. *Holohan*, 246 F.3d at 1202. In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over those of non-specialists. *Id.*

In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

The ALJ satisfies the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13. When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Importantly, the "specific and legitimate" standard analyzed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians, licensed psychologists, and various other specialists. *See* former 20 C.F.R. §§ 404.1513(a) (2014).

"Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and other nonmedical sources—are not entitled to the same deference as acceptable medical sources.[2] *Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *see* 20 C.F.R. § 404.1527(f). ALJs must consider nonmedical sources' lay observations about a claimant's symptoms or how an impairment affects ability to work. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount a nonmedical source's opinion by providing reasons "germane" to each witness for

---

[2] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8). As Plaintiff filed her claim in 2014, this does not apply here.

doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

## 2. Treating physician, Caryn Jackson, M.D.

Firstly, Plaintiff argues that the ALJ improperly discredited Dr. Jackson's opinion. ECF No. 12 at 6-9. In July 2016, Dr. Jackson opined that Plaintiff would miss work four days or more per month due to uncontrolled mental health and chronic pain. AR 32, 512-13. The ALJ assigned minimal weight to Dr. Jackson's opinion because it did not include any abnormal physiological findings or objective evidence of chronic pain and because it was inconsistent with other medical evidence in the record, AR 32. *See Magallanes v. Bowen*, 881 F.2d 747, 753–754 (9th Cir. 1989) (an ALJ does not have to adopt a physician's opinion in its entirety and can properly reject portions of it).

The ALJ noted that Dr. Jackson's opinion was largely based upon Plaintiff's subjective complaints regarding the symptoms and limitations caused by her chronic pain and mental health. AR 32. In such a situation, an ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports, and the ALJ finds the claimant not credible. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also Tonapetyan*, 242 F.3d at 1149 (a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted).

Moreover, an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). It appears there is no objective medical evidence in the record to verify the disabling back and shoulder pain alleged by Plaintiff. In fact, Dr. Jackson reported in her notes that multiple MRI and x-rays of Plaintiff's back and shoulder displayed normal and unremarkable findings. AR 32, 369, 785.

This Court has already determined that the ALJ properly discounted Plaintiff's credibility. *See supra* at pp. 9-18. As such, the ALJ did not err by discrediting the portions of Dr. Jackson's opinion which relied upon Plaintiff's own statements rather than objective medical evidence.

The ALJ also noted that Dr. Jackson's opinion was inconsistent with opinions from other health care providers. AR 32. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record). For instance, despite Dr. Jackson's opinion that Plaintiff's depression was severe enough to markedly interfere with her ability to perform work functions, Dr. William's noted no clinical evidence of Plaintiff's depression, which may have been attributable to the condition being well controlled by medication. AR 32, 480. Further, during

multiple appointments at Yakima Urology Associates, the examining doctor noted that Plaintiff did not appear to be depressed. AR 32, 340, 344, 936.

It is the ALJ's task to sort through "conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings," which the ALJ did here. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111; *see also Thomas*, 278 F.3d at 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Jackson's opinion.[3]

### 3. Examining Psychologist, R.A. Cline, Psy.D.

Secondly, Plaintiff contends that ALJ erred in his assessment of Dr. Cline's opinions. ECF No. 12 at 9-11. Dr. Cline evaluated Plaintiff in August 2014, AR

---

[3] In his decision, while discussing the amount of weight assigned to Dr. Jackson's opinion, the ALJ stated "the claimant has no documented treatment from Dr. Jackson or other treatment providers for impairments causing chronic pain." AR 32. The Court notes that both parties provided argument in their briefing regarding the statement's possible mischaracterization of the record. ECF Nos. 12 at 6-7 and 13 at 8-9. However, as the ALJ offered multiple other clear and convincing reasons for discrediting Dr. Jackson's opinion, thus, such mischaracterization of the record would be harmless. *See Molina*, 674 F.3d at 1111-15 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination" and a court cannot reverse an ALJ's decision on account of an error that is harmless).

347-51, and June 2016, 568-72. AR 30-31. In his 2014 opinion, Dr. Cline opined that Plaintiff had mild or no limitations to plan independently, ask simple questions, make simple decisions, adapt to changes in a routine work setting, perform routine tasks, learn new tasks, maintain regular attendance, or to understand and persist with routine instructions. AR 30, 349-51. The doctor further opined that Plaintiff would have moderate limitations in her ability to maintain appropriate behavior, complete a normal workday, perform effectively in a work setting, being aware of normal hazards. *Id*. The ALJ afforded significant weight to Dr. Cline's 2014 opinion with regard to Plaintiff's functioning because it was consistent with the longitudinal findings in examinations as well as her daily activities. AR 30.

However, the ALJ assigned minimal weight to the majority of Dr. Cline's 2016 opinion. In his 2016 opinion, Dr. Cline opined that Plaintiff had marked limitations in her ability to complete a workday, maintain appropriate behavior, and perform effectively in a work setting. AR 30-31, 568-72. He further opined that Plaintiff would have moderate limitations in her ability to plan independently, make simple decisions, learn new tasks, or to understand and persist with routine instructions, and mild to no limitations in her ability to ask simple questions, adapt to changes in a routine work setting, perform routine tasks, learn new tasks, or maintain regular attendance. *Id.* The ALJ agreed with Dr. Cline's 2016 opinion

with regard to Plaintiff's mild limitations but assigned the rest of the opinion minimal weight for the following reasons, AR 31. *See Magallanes*, 881 F.2d at 753–754; *see supra* p. 21.

The ALJ first noted that Dr. Cline did not give any objective basis for his assessment of disability. AR 31. For instance, the doctor noted that Plaintiff's post-traumatic stress disorder ("PTSD") symptoms appeared to have increased since her prior evaluation in 2014, but this determination was based solely on Plaintiff's subjective complaints. AR 31, 568-72. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 599; *Fair*, 885 F.2d at 604.[4] Further, An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Next, the ALJ noted that Dr. Cline's two opinions were internally inconsistent. AR 31. For example, in the 2016 evaluation, Dr. Cline reported that Plaintiff presented with normal speech, cooperative behavior, fair eye contact, decent mood, and fair range and affect. AR 31, 570-72. This was an improvement from her sarcastic behavior, dysthymic mood and blunt affect during the 2014

---

[4] As previously explained, the Court has already determined that the ALJ properly discounted Plaintiff's credibility. *See supra* at pp. 9-18 and 21.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25**

evaluation. AR 347-51. However, despite Plaintiff's improvements in 2016, Dr. Cline inconsistently opined that the she was more limited than she was in 2014. AR 31. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. A discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

Lastly, the ALJ found Dr. Cline's 2016 opinion that Plaintiff would have marked limitations completing a normal workday and performing in a work setting was inconsistent with Plaintiff's ability to be a caretaker to her mother. AR 32, 61, An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Because the ALJ presented a reasonable interpretation of Dr. Cline's opinion along with other evidence in the record, the Court will not second-guess it. *See Reddick*, 157 F.3d at 725; *Rollins*, 261 F.3d at 857; *Molina*, 674 F.3d at 1111; *Thomas*, 278 F.3d at 954; *supra* at p. 23. Thus, the Court finds the ALJ did not err in his consideration of Dr. Cline's opinion.

### 4. Examining physician, William Drenguis, M.D.

Thirdly, Plaintiff argues that the ALJ improperly assigned less weight to Dr. Drenguis' opinion. ECF No. 12 at 12-14. In February 2015, Dr. Drenguis opined

that Plaintiff could stand and/or walk for at least two hours in an eight-hour workday; sit less than six hours; lift or carry 10 pounds frequently and 20 pounds occasionally; occasionally stoop, kneel, crouch crawl, or climb; occasionally reach; frequently finger, handle and feel with her upper right extremity; and required limited exposure to pulmonary irritants. AR 32, 481-88.

The ALJ agreed with Dr. Drenguis' assessment that Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally, but assigned minimal weight to the rest of the doctor's opinion because it was based on Plaintiff's chronic pain, back impairment, and right shoulder impairment of which there are no treatment records after Plaintiff's application for benefits;[5] it was inconsistent with the doctor's own findings as well as other evidence in the record; and it was largely based on Plaintiff's complaints which are not credible, AR 32. *See Magallanes*, 881 F.2d at 753–754

To support this determination, the ALJ pointed to inconsistencies between the physical limitations proposed by Dr. Drenguis and his own examination notes. For example, he noted that Plaintiff was observed walking without difficulty, could perform a full squat, could tandem walk, had normal grip strength, and displayed a good range of motion. AR 32, 484-86. An ALJ may reject opinions that are

---

[5] The Court again takes note of the ALJ's potential mischaracterization of the record. However, as with Dr. Jackson's opinion, the ALJ provided multiple other clear and convincing reasons for discrediting Dr. Drenguis' opinion, therefore, such mischaracterization would be harmless. *See Molina*, 674 F.3d at 1111-15*; see supra* at p. 23 n. 2.

internally inconsistent. *Nguyen*, 100 F.3d at 1464. A discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

In addition to being internally inconsistent, Dr. Drenguis' opinion was also inconsistent with other medical evidence in the record. AR 32. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. The ALJ pointed to multiple examinations during which Plaintiff displayed a full range of motion in her extremities with no palpation and had no deficits in her sensation or strength. 671-74, 692, 755, 762, 767, 924. In 2010 and 2014, MRI and x-rays of Plaintiff's shoulder and back were unremarkable. AR 501-02, 785. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195.

Further, the ALJ also noted that Dr. Drenguis' proposed limitations were based largely upon Plaintiff's own subjective complaints. The Court has already determined that the ALJ properly discredited Plaintiff for multiple clear and convincing reasons. *See Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 599; *Fair*, 885 F.2d 597 at 604; *supra* pp. 21 and 24. Thus, the ALJ did not err by

assigning Dr. Drenguis' opinion less weight due to his reliance on Plaintiff's own statements regarding her impairments and limitations.

Because the ALJ presented a reasonable interpretation of Dr. Drenguis' opinion along with other evidence in the record, the Court will not second-guess it. *See Reddick*, 157 F.3d at 725; *Rollins*, 261 F.3d at 857; *Molina*, 674 F.3d at 1111; *Thomas*, 278 F.3d at 954; *supra* at p. 23. Thus, the Court finds the ALJ did not err in his consideration of Dr. Drenguis' opinion.

### 5. Examining physician, C. Donald Williams, M.D.

Fourthly, Plaintiff asserts that the ALJ erred by assigning only some weight to Dr. Williams' opinion. ECF No. 12 at 14-16. In his February 2015 opinion, AR 33, 475-80, Dr. Williams opined that Plaintiff was mildly limited in her memory and understanding for simple matters, and moderately limited with regard to detailed matters. AR 33, 480. He further opined that Plaintiff would have mild to moderate limitations in her concentration and attention; no significant limitations in her sustained concentration for short and simple instructions; and no mental limitations in maintaining a normal workday or workweek.

The ALJ pointed to substantial evidence in the record that was consistent with Dr. Williams' opined limitations regarding Plaintiff's concentration, persistence, pace, and unskilled work tasks. AR 33. Conversely, the doctor's ambiguous opinion regarding Plaintiff's social limitations relied on Plaintiff's own

statements and was inconsistent with examination findings and Plaintiff's daily activities. Thus, the ALJ assigned only some weight to Dr. Williams' opinion.

Dr. Williams opined that "[Plaintiff's] history suggests that she is moderately to markedly limited with regard to working in proximity to other people." AR 480. However, Dr. Williams conversely opined that: Plaintiff "was relatively friendly and displayed a relatively full range of effect;" Plaintiff's ability to remain in a relationship with her partner several years; and her reports that she saw her neighbors "all the time," suggest a lack of social deficit. AR 33, 480. He further opined that her mental conditions did not limit her ability to maintain a normal workday and workweek. *Id*. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also Bayliss*, 427 F.3d at 1216 (a discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion).

Further, the ALJ noted that marked social limitations were not consistent with Plaintiff's ability to care for her mother, start a support group, visit her partner's family, and interact with her neighbors. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856.

1    Accordingly, because the ALJ presented a reasonable interpretation of Dr.

2    Williams' opinion along with other evidence in the record, the Court will not

3    second-guess it. *See Reddick*, 157 F.3d at 725; *Rollins*, 261 F.3d at 857; *Molina*,

4    674 F.3d at 1111; *Thomas*, 278 F.3d at 954; *supra* at p. 23. Thus, the Court finds

5    the ALJ did not err in his consideration of Dr. Williams' opinion.

6              **6.  Mental health counselor, Laurie Jones, L.M.F.T.**

7         Lastly, Plaintiff insists that the ALJ erred by assigning minimal weight to

8    Ms. Jones' opinion. ECF No. 12 at 16-17. The opinion testimony of Ms. Jones,

9    falls under the category of "other sources." "Other sources" for opinions include

10   nurse practitioners, physicians' assistants, therapists, teachers, social workers,

11   spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An

12   ALJ is required to "consider observations by non-medical sources as to how an

13   impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226,

14   1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or

15   disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at

16   1467. An ALJ is obligated to give reasons germane to "other source" testimony

17   before discounting it. *See Dodrill*, 12 F.3d at 919.

18        In April 2016, Ms. Jones opined that Plaintiff had marked limitations in her

19   ability to: make independent plans; use public transportation; be aware of normal

20   hazards; respond appropriately to change in a work setting; maintain appropriate

behavior; get along with coworkers; accept instructions; interact appropriately with the public; complete a normal workday; make simple decisions; work in proximity to others; sustain an ordinary routine; perform activities within a schedule; maintain attention and concentration; and understand and remember simple instructions. AR 31, 508-11. She further opined that Plaintiff would be absent from work four or more days a month and would be off task at least 30 percent of a 40-hour workweek. *Id.*

The ALJ assigned minimal weight to Ms. Jones opinion because she gave no basis for her assessment of disability as she did not mention a single impairment, symptom, or examination finding. *See Morgan*, 169 F.3d at 601 (noting an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity"); *see also Bray*, 554 F.3d at 1228 (indicating a medical opinion may be rejected if it is unsupported by medical findings).

Furthermore, the ALJ pointed to Ms. Jones examination notes in which Plaintiff presented with appropriate appearance, unremarkable behavior, euthymic mood, appropriate affect and speech, cooperative attitude, fair judgment, average intellect, intact memory, maintained attention, and logical thought process. AR 31, 389-90, 393-94, 424-25, 428-29. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). A

discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. Thus, because Ms. Jones' examination notes were conflicting with her overall opinion, the ALJ properly assigned Ms. Jones' opinion less weight.

Because the ALJ presented a reasonable interpretation of Ms. Jones' opinion along with other evidence in the record, the Court will not second-guess it. *See Reddick*, 157 F.3d at 725; *Rollins*, 261 F.3d at 857; *Molina*, 674 F.3d at 1111; *Thomas*, 278 F.3d at 954; *supra* at p. 23. Thus, the Court finds the ALJ did not err in his consideration of Ms. Jones' opinion.

**C. The ALJ Did Not Err at Step Two of the Sequential Evaluation Process.**

Plaintiff further contends that the ALJ erred by failing to find that she had several additional severe impairments at step two of the five-step sequential evaluation process. ECF No. 12 at 3-5.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting

SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

Under step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d). Importantly however, a diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). An impairment or combination of impairments must have lasted for at least twelve continuous months. 20 C.F.R. §§ 416.905, 416.912, *Edlund*, 253 F.3d at 1159-60. And an alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and must be established by medical evidence not only by a plaintiff's statements regarding her symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

//

### 1. The ALJ did not err by determining that Plaintiff's diabetes was not a severe impairment.

The ALJ did not list Plaintiff's diabetes as a severe impairment, however, peripheral neuropathy, a complication associated with diabetes, was listed. AR 20. Plaintiff argues that the ALJ's failure to recognize Plaintiff's diabetes as severe constitutes harmful error. ECF No. 12 at 3.[6]

Specifically, Plaintiff contends that the ALJ failed to consider pain and fatigue symptoms associated with her diabetes. *Id*. In support of this argument, Plaintiff points to check-box form filled out by Dr. Jackson which indicates that Plaintiff's uncontrolled diabetes was *reasonably likely* to cause pain. AR 512 (emphasis added). However, Dr. Jackson does not provide any basis or explanation for this determination and an impairment will only be considered severe if, based on medical findings describing the limiting effect and loss of function attributed to the impairments, they significantly limit a claimant's ability to do basic work activities. *Ukolov*, 420 F.3d at 1005. Additionally, the ALJ properly assigned minimal weight to Dr. Jackson's opinion for the reasons previously discussed in

---

[6] Plaintiff also contends that the ALJ erred by determining that Plaintiff's diabetes was not severe because an ALJ in a previous decision listed her diabetes as severe. ECF No. 12 at 3. However, Plaintiff notably failed to cite any authority in support of this argument and the Court is not aware of such authority. Moreover, assuming that the ALJ erred by giving improper deference to the prior ALJ, he nonetheless provided multiple other clear and convincing reasons for determining that Plaintiff's diabetes was not a severe impairment. *See Molina*, 674 F.3d at 1111-15 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination" and a district court cannot reverse an ALJ's decision on account of an error that is harmless).

this order, *see supra* at pp. 21-23. *See Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC).

Further, examining and treating doctors' notes indicated that Plaintiff's diabetes was stable, improving, managed by medication, uncomplicated and did not cause any complications, even when her blood sugar levels were uncontrolled. AR 368, 372, 375, 483. The fact that a diagnosis exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545 1549-50 (9th Cir. 1985). Impairments that can be controlled with treatment are not disabling. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

And importantly, Plaintiff did not identify any limitations caused her diabetes that were not already considered by the ALJ when determining Plaintiff's residual functional capacity. Absent proof of limitations affecting Plaintiff's ability to perform basic work activities an impairment is not considered severe. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Thus, the ALJ did not err in not finding Plaintiff's diabetes to be a severe impairment at step two.

**2. The ALJ did not err by determining that Plaintiff's edema was not a severe impairment.**

The ALJ did not list Plaintiff's edema as a severe impairment at step two of the sequential evaluation process. AR 20. Plaintiff argues that the ALJ committed harmful error by failing to find Plaintiff's edema was severe and by consequently failing to incorporate a residual functional capacity accommodation for Plaintiff's need to elevate her lower extremities above her heart. ECF No. 12 at 4.

While the record does show that Plaintiff has suffered multiple episodes of edema and cellulitis, AR 399, 404, 408, 613, 597, 762, 788, 923, it also indicates that these conditions were transient. This is evidenced by multiple medical records which noted Plaintiff attending appointments showing no signs of edema or cellulitis. AR 379, 506, 814, 823, 830.

Further, although Plaintiff was told to elevate her legs on two occasions when her edema and cellulitis were active, there are no indications that these were long-term treatment recommendations. In May 2014, Plaintiff presented with cellulitis. AR 404. She was placed on antibiotics and instructed to rest, keep lower extremities elevated above the heart, reduce sodium/salt intake, and to follow up in one week if the condition was not improving. *Id*. In September 2016, Plaintiff presented with bilateral lower extremity edema. AR 781. As a result, Dr. Jackson instructed Plaintiff to elevate her legs *at night* to reduce the swelling and purchase

over-the-counter compression socks. *Id.* (emphasis added). Thus, despite Plaintiff's contentions, there is no indication that these recommendations would have a long-term effect on Plaintiff's ability to perform work functions nor that she would have constantly needed to be elevating her lower extremities. Additionally, these recommendations suggest that these transient conditions were treatable. Impairments that can be controlled with treatment are not disabling. *See Warre ex rel. E.T. IV*, 439 F.3d at 1006. Thus, the ALJ did not err when he determined Plaintiff's edema was not a severe impairment. Nor did he err by not providing an accommodation for Plaintiff to elevate her legs in the residual functional capacity.

### 3. The ALJ did not err by determining that Plaintiff's migraines were not a severe impairment.

The ALJ did not specifically discuss Plaintiff's headaches, nor did he list them as a severe impairment. AR 20. Plaintiff very briefly argues that the ALJ erred by not determining Plaintiff's migraines were a severe impairment and, as a result, by not accommodating her headache-induced sensitivity to light and noise. ECF No. 12 at 4.

Although the ALJ did not specifically mention migraines, he did discuss Plaintiff's chronic pain allegations in abundance. AR 20-33. The ALJ also discussed multiple medical opinions in which Plaintiff's headaches were considered. AR 22-33. For example, Dr. Jackson opined that Plaintiff's chronic headaches would interfere with her ability to maintain a normal workweek.

However, the ALJ properly assigned minimal weight to Dr. Jackson's opinion, *see supra* at pp. 20-23. *See Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC).

While the record does show that Plaintiff's migraines were diagnosed by medical providers, the fact that a diagnosis exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key*, 754 F.2d at 1549-50. Plaintiff failed to point to objective medical findings regarding Plaintiff's migraines that were not reliant upon Plaintiff's own subjective complaints and Plaintiff was properly discredited by the ALJ. *See supra* at 9-18. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149.

Further, the only limitations listed by Plaintiff with regard to Plaintiff's headaches were her light and noise sensitivity. *See Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities). As both of these limitations are based solely on Plaintiff's own statements concerning her symptoms, the ALJ did not err by not including such an accommodation in Plaintiff's residual functional capacity.

A district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

The burden of showing that an error is harmful generally falls upon the party

appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

Thus, even assuming that the ALJ erred by not directly discussing Plaintiff's

migraines at step two, any such error would be harmless as Plaintiff has failed to

assert credible evidence to substantiate the severity of her migraines nor her need

for further accommodations.

### 4. The ALJ did not err by determining that Plaintiff's deep vein thrombosis was not a severe impairment.

In November 2015, Plaintiff was hospitalized for cellulitis and deep vein

thrombosis ("DVT"). AR 589. However, the ALJ did not list Plaintiff's DVT as a

medically determinable severe impairment. AR 20. Plaintiff contends that the

ALJ's failure to list her DVT as a severe impairment constitutes harmful error.

ECF No. 12 at 4.

As seen in her hospital records from November 2015, Plaintiff was

discharged after one day in the intensive care unit and both her cellulitis and her

DVT were noted to be resolved or resolving and her symptoms were much

improving. AR 598. Impairments that can be controlled with treatment are not

disabling. *See Warre ex rel. E.T. IV*, 439 F.3d at 1006. Plaintiff was subsequently

placed on anticoagulants. AR 846, 848. Plaintiff argues that the anticoagulants

increase her risk of excessive bleeding which the ALJ did not account for in

1    Plaintiff's residual functional capacity. ECF No. 12 at 4. However, Plaintiff's

2    argument is not compelling because the ALJ included the need to avoid

3    concentrated exposure to *hazards* and pulmonary irritants in Plaintiff's residual

4    functional capacity. AR 25

5           Plaintiff has not asserted any other DVT limitations that should have been

6    considered by the ALJ. Thus, the Court finds that the ALJ did not err by

7    determining that Plaintiff's DVT was not a severe impairment and that he properly

8    considered Plaintiff's limitations when determining her residual functional

9    capacity.

10          Furthermore, because Plaintiff was found to have at least one severe

11   impairment, this case was not resolved at step two. Thus, any error in the ALJ's

12   finding at step two is harmless, if all impairments, severe and non-severe, were

13   considered in the determination Plaintiff's residual functional capacity. *See Lewis*

14   *v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an

15   impairment in step two is harmless error where the ALJ includes the limitations of

16   that impairment in the determination of the residual functional capacity). While

17   Plaintiff argues that the ALJ erred by failing to find additional impairments severe

18   at step two, Plaintiff does not describe any additional limitations that were not

19   included by the ALJ in assessing his residual functional capacity. Furthermore, the

20   ALJ specifically noted that he considered *all symptoms* in assessing the residual

functional capacity. AR 25 (emphasis added). The ALJ accounted for Plaintiff's symptoms when limiting her to a limited form of light work, including additional limitations in various movements, concentrated exposure to hazards and pulmonary irritants, contact with the general public, following directions, and pace. AR 25. Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.

## VIII. CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 26th day of April, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 42